# Smith v. Miller.

A Constable is not bound to execute a writ unless the defendant resides in his district, or he is the Constable next nearest to the defendant, and in such case where he refused to serve the writ and sent it back to the Magistrate he cannot be proceeded against for such refusal or for neglecting to make a return.

In such case the Act of March 21, 1772, requiring demand to be made before bringing an action against a Constable for anything done in obedience to any warrant is not applicable as the Constable refused to do anything in obedience to the warrant.

The discretion of a Magistrate in selecting the next and most convenient Constable is not an arbitrary, but a legal discretion, and he cannot at his whim abuse this discretion and proceed to arbitrarily say that a certain Constable is the next and most convenient, when in fact he knows or ought to know that he is not.

Where a Magistrate's record states that a plaintiff was present and was sworn it is presumed that the judgment is based on this alleged evidence and not on other possible proofs, and when it is shown on certiorari that the plaintiff in fact did not appear the judgment will be set aside.

Where the record as made up by a Magistrate does not conform to the facts as admitted by the plaintiff, on certiorari the judgment should be set aside.

The Court may on certiorari take note of a fatal error not embodied in the exceptions.

CONSTABLES—DUTY OF TO SERVE WRITS—MAGISTRATE'S REC-
ORD—FALSIFICATION OF—CERTIORARI—ACTS OF MARCH
21, 1772, SEC. 6, 1 SM. L., 365, AND MARCH 20,
1810, 5 SM. L., 161.

No. 10, September Term, 1902, C. P. of Lancaster county.
Certiorari.

Charles W. Eaby, Esq., for certiorari.

A. B. Hassler, Esq., contra.

Opinion by LANDIS, J., January 17, 1903.

## OPINION.:

The facts, as gleaned from the record and from the depositions taken upon the present certiorari, seem to show that the above named plaintiff, having a claim for wages of manual labor against one Samuel J. Pennell, brought suit against him before an Alderman of the City of Lancaster, and judgment was entered by the Alderman against Pennell for the sum of $23.83. Pennell lived in Salisbury township, but the summons was directed to the defendant, who is the Constable of Paradise township, and the defendant accepted and served the writ. The Al-

derman then issued an execution upon the said judgment, which he also directed to the said defendant; but Miller refused to receive this writ of execution, and immediately returned it through a member of the bar to the Magistrate. The Magistrate again sent another writ to the defendant; but this, in like manner, was also promptly refused and returned. The Alderman then issued a summons against the Constable, in accordance with the twelfth section of the Act of March 20, 1810, P. L. 208, in which he recited that it was a summons "against John L. Miller, Constable of Paradise Township, Lancaster county, Pa., to show cause why judgment and execution should not issue against him for the amount of an execution for a debt for wages of manual labor directed and delivered to him in favor of the plaintiff and against Samuel J. Pennell, which he has neglected to return according to law." The proceedings of the Alderman, as returned, state: "August 12, 1902. The defendant fails to appear. The plaintiff appears and demands judgment. Plaintiff sworn, and, upon a full examination of the proofs and allegations, judgment publicly for $23.00, original judgment and interest, and $4.00 Alderman's costs on original suit; total judgment, $27.00 and costs of suit, on August 12, 1902, at nine and a half a. m., for plaintiff. August 13, 1902, execution issued." The fact is, that J. Irvin Smith, according to his own testimony, was not present at the Alderman's office at the time of the hearing, and of course, could not have been sworn and heard, as stated in the record; and outside of this entry, there is nothing to show that any evidence was presented at that time. It is fair to presume that, where the statement is made that the plaintiff was present and was sworn, these are the proofs and allegations upon which the Justice depended for his judgment. Where it is afterwards shown that he did not appear at all, the falsification of the record is such as to cast doubt upon the integrity of the judgment. It cannot then be said, in order to sustain it, that perhaps other proofs were there adduced. Thus, in Eckstein v. McCoy, 3 Lanc. Law Rev., 178, where the Justice made an entry in his docket that "proof of plaintiff's claim

Smith v. Miller.

was made," and it was shown that the plaintiff did not appear and no proof was produced, the judgment was reversed.

The Act of Assembly does not require the Justice to set out the evidence upon which the judgment is founded, but only the kind of evidence on which the plaintiff's demand rests. Act of March 20, 1810, Sec. 4, P. L. 210; Baker v. Richart, 12 C. C. R., 318; Cook v. Minick, 1 C. C. R., 603. And this is especially so where the judgment is by default. Miller v. Savage, 2 Luz. Leg. Reg., 191; Moore v. Sutliff, 7 Luz. Leg. Reg., 79; Merriam v. Myerscough, 4 C. P. Rep., 52; Shafer v. Kelly, 4 C. P. Rep., 44; Ott v. Snyder, 3 Lanc. Law Rev., 185. But, if the Justice proceeds without any evidence at all, it is such misconduct as can be shown by depositions and such as is sufficient to set aside the judgment on certiorari. Road Commissioners of Mill Creek v. Fickinger, 51 Pa. 48. The record, as made up, does not conform to the facts as admitted by the plaintiff, and, if exceptions had been filed to it on this account, a sufficient reason would be presented for setting aside these proceedings; but, even though this be so, this Court has held, in Ackerman v. Stoner, 7 Lanc. Law Rev., 73, that "while the point has not been made by exception, the Court will note a substantial and fatal error in the proceedings, where it is deemed essential for the purpose of justice." See, also, Hunter and Yoder v. Weidner, 1 Woodward, 6. If it was necessary we might seize upon this pretext to prevent what would otherwise be a wrongful use of judicial process.

Only some of the exceptions, we think, require consideration at our hands. The first one is that "the record of the Alderman does not show what return, if any, was made by the defendant to the execution issued by J. Irvin Smith against Samuel J. Pennell." It would, perhaps, be more proper to say that the Magistrate's record contains statements not strictly in keeping with the facts. The transcript says that the Constable neglected to return the writ according to law, whereas it appears, from his own evidence, that the Constable refused to accept and execute the writ. If he was not bound/to execute it, he certainly could

Smith v. Miller.

not be proceeded against for neglecting to make a return, and, even if he should have served it, his conduct should have been set forth in the record, and his liability should have rested upon this neglect. In stating the case as he did, the Alderman was placing it upon a false basis. He should have stated the actual facts as they were, and not as he conceived they ought to have been, or as he desired them to be. The proceedings of a Magistrate which must rest, if at all, upon a non-existing fact, cannot stand. This seems to be the situation which here confronts us.

The second exception is, that the record fails to show that demand had been made at the defendant's usual place of abode by the party intending to bring this action, or by his attorney or agent, in writing, etc., and that he had neglected or refused for the space of six days after such demand, and that the Magistrate had, therefore no jurisdiction to issue the summons. The Act referred to, and which is relied upon, by counsel for exceptant, to sustain this proposition, is the Act of March 21, 1772, Sec. 6, I Sm. L., 365. It provides that "no action shall be brought against any Constable or officer, or any person or persons acting by his or their order, and in his aid, for anything done in obedience to any warrant under the hand and seal of any Justice of the Peace, until demand hath been made or left at the usual place of his abode by the party or parties intending to bring such action, or by his, her or their attorney or agent, in writing, signed by the party demanding the same, of the perusal and copy of such warrant, duly certified under his hand, and the same hath been neglected or refused for the space of six days after such demand." It is, however, evident that the Act does not here apply, for the very contention of the exceptant is that the defendant was not doing anything "in obedience to any warrant," but that he refused to accept it, and returned it to the Magistrate. This objection is, therefore, not fatal to the proceedings, and the exception which embodies it must be dismissed.

The third and fourth exceptions raised, however, the most important question in the case. It is conclusively proved that

Smith v. Miller.

Samuel J. Pennell lived in Salisbury township, and that the defendant is the Constable of Paradise township. M. D. Lynch is the Constable of Salisbury township, and the adjoining townships to Salisbury are Leacock, Sadsbury, Paradise, Bart, East Earl and Caernarvon. It is ten miles from the house of the defendants to that of Samuel J. Pennell; whereas, Constable Lynch lives about five miles distant, and the next nearest Constable is the Constable of Salisbury township, and the adjoining town a half miles away from Pennell. At the time the defendant received the executions, he was under medical attendance, and when the present proceeding was had, he was sick in bed. The Alderman says he had no knowledge of this, and that, when he issued the summons, he did not know where Pennell resided, except that it was somewhere in that section of the county. But this, of course, makes no difference now, as the summons was duly served, and after that time, he had, or could have easily obtained such knowledge. He gives no reason why, after it was refused, or even before, he did not issue the execution to the Constable of the district in which Pennell lived, or to the next nearest Constable to him, and the crucial question therefore arises whether, under these circumstances, the defendant was bound to serve the writ.

The Act of March 20, 1810, Sec. II, P. L. 208, commands that the writ shall be "directed to the Constable of the township, ward or district where the defendant usually resides, or can be found, or to the next Constable most convenient to the defendant." In the case of Commonwealth vs. Lentz, 106 Pa., 643, which was from this county and is very similar in its facts to the one now before us, the summons was served by Lentz, who was neither the Constable of the ward in which the defendant resided, nor the next nearest Constable. After judgment had been entered, an execution was also issued to him, which he refused to serve, and thereupon suit was brought against him and his bondsmen. The Supreme Court, in passing upon the case, say: "The question does not involve the power of the Alderman to direct the writ as he did, but rather the power of the Constable

to refuse to receive it. That it is not only customary, but lawful for Aldermen and Justices of the Peace to issue their process to other Constables than the one residing in the same ward with the defendant, we do not doubt; neither do we hesitate to say that any Constable within the Magistrate's jurisdiction who would voluntarily receive such writ would be bound to execute it, and that he, with his sureties, would be responsible for a default or neglect in its proper execution. So we agree with the dicta as found in Clark vs. Worley, 7 S. & R., 349, that not only is the Constable of the township in which the defendant resides bound to receive and execute writs issuing from any Alderman or Justice of the county, but also that a like obligation is imposed upon the Constable next most convenient to the residence of such defendant. The Act of Assembly, however, imposes no such duty on any other Constables than as above stated. One who is neither next nor most convenient to the defendant cannot be compelled to receive and execute such writ, though directed to him. The Constable is a township or ward officer; outside of it he has no jurisdiction, and even his power to execute process beyond his immediate district arises rather from the jurisdiction of the Magistrate than from his own. The Magistrate's power over the Constable, however, is limited. He cannot compel ad libitum, any Constable of the county to serve his writs and execute his process. The Act of 1810 gives him such power over only two such officers—the one elected for the ward in which the defendant resides, and the other, him who may be next or most convenient to such defendant; but he has no such power over a Constable not embraced by the above recited provisions. So it is all well and proper to say that, where process has not been executed, the power of the Magistrate to select the officer to serve it, cannot be attacked collaterally; for, as was held in Smith vs. Schell, 13 S. & R. 336, that is a matter upon which he has a right to consult his own judgment and convenience. This, however, is not in point, for the question is not who may, but who must, obey the behest of the Justice, and to ascertain this, we are compeled to revert to the statute. . . .

Smith v. Miller.

The statute answers: 'The Constable of the ward, district or township where the defendant resides, or the next Constable most convenient to the defendant.' In this sentence, force, of course, must be given, not only to the word 'next,' but also to the words 'most convenient.' " The discretion, however, of a Magistrate in selecting the next and most convenient Constable is not an arbitrary, but a legal, discretion. Some .of the townships of the counties of the state contain many miles of area, and the Magistrate cannot at his own whim, abuse this discretion and proceed to arbitrarily say that a certain Constable is the next and most convenient, when, in fact, he knows, or ought to know, that he is not. If this were so, he could select and enforce any Constable to serve his process, and the right of the Constable to refuse, no matter how distant he might be from the party defendant in the writ, would be lost in the power of the Magistrate to choose. This would result, not only to the injury and inconvenience of the Constable, but also to the injury of the suitor, in that costs and unnecessary expense would be imposed upon him. We are of the opinion that the conduct of the Alderman in this case was contrary to law, and we, therefore, sustain these exceptions.

Exceptions A, C and D are accordingly sustained, and the proceedings of the Magistrate are set aside.

Exceptions sustained.